UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════════

Kevin D. Yager,

        Plaintiff,

-v.-                                                 5:11-cv-00527  NPM

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

-----------------------------------------------------------------------------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Legal Services of Central NY<br>Attorney for Plaintiff<br>427 S. Salina St. Suite 300<br>Syracuse, NY 13202 | Christopher Cadin, Esq. |
| Social Security Administration<br>Attorney for Defendant<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | Michelle L. Christ, Esq. |

NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM - DECISION AND ORDER

    This action was filed by plaintiff Kevin D. Yager ("plaintiff") pursuant to

42 U.S.C. § 405(g) to review the final determination of the Commissioner

("Commissioner") of the Social Security Administration ("SSA"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  Currently before the court is plaintiff's motion for judgment on the pleadings (Doc. No. 12) seeking reversal of the Commissioner's decision with a finding of disability and a remand for the purpose of determining benefits, or in the alternative, an order of remand for further administrative proceedings.  Also before the court is the Commissioner's motion for judgment on the pleadings (Doc. No. 15) seeking affirmation of the Commissioner's findings. For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's motion is denied.

## I.     Procedural History and Facts

### A.      Procedural History

Plaintiff filed for Social Security Disability ("DIB") and Supplemental Security Income ("SSI") benefits on June 10, 2005, with an alleged onset date of September 1, 2002.  Plaintiff's claim was initially denied, and on August 23, 2005, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  The initial hearing was held on May 11, 2007 in Syracuse, New York before ALJ Robert E. Gale ("ALJ Gale"), who denied plaintiff's claim on May 23, 2007.   The Appeals Council granted a request for review on September 5, 2007, vacating and

2

remanding the decision, and directing the ALJ to obtain updated medical records from plaintiff's treating and other medical sources, including medical source statements.  The ALJ was also instructed to obtain a consultive mental status examination, and obtain, if necessary, medical and/or vocational expert evidence. The Appeals Council noted that if the additional evidence did not adequately clarify the record, the ALJ "will recontact the medical sources for further information." Tr.[1] 40.

A second hearing was held before ALJ Gale on June 19, 2009.  Also present at that hearing was vocational expert ("VE") Victor G. Alberigi.  On July 22, 2009, the ALJ issued an unfavorable decision.  The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's final determination.  Plaintiff's appeal was filed in this court on May 9, 2011.

**B.    Facts**

The following facts are taken from plaintiff's statement of facts.  The Commissioner incorporates the statement of facts contained within the ALJ's decision dated July 22, 2009, at Tr. 13-26, and the court supplements plaintiff's facts as needed from the record.

---

[1]    References to the Administrative Transcript are denoted as "Tr. __".

Plaintiff was born on September 26, 1962 and was 39 years old on the alleged disability onset date of September 1, 2002.  Plaintiff completed the eighth grade, and attended high school up to the 10th grade in a Board of Cooperative Educational Services ("BOCES") program.  Plaintiff reported difficulty in school and was placed, at age sixteen, in the House of the Good Shepard for tardiness, and also spent time at the Hillbrook Juvenile Detention Center.  Plaintiff was repeatedly homeless, living in shelters prior to becoming an inpatient at Commonweath Place for chemical dependency treatment in August of 2004.  Plaintiff has a significant history of substance abuse, and was in the Conifer Park treatment program in March 2003.  Plaintiff alleges that he ceased abusing substances when he entered Commonwealth Place for inpatient treatment in 2004, but reported to a consultive examiner in 2008 that he wasn't drinking because he had no money, and used marijuana when he needed to.[2]  Plaintiff was required to leave Commonwealth Place, a non-smoking facility, when he relapsed on cigarettes.  Plaintiff alleges that he has mental scarring due to his upbringing in an abusive environment, after his father committed suicide when plaintiff was eleven years old.  Plaintiff states that he had several concussions from sports injuries and

---

[2]    Plaintiff testified at the June 19, 2009 hearing that he had used marijuana the previous weekend. Tr. 491.

assaults beginning in adolescence.  Plaintiff has been arrested for assault, and the record indicates that he was stabbed by the owner of a home he tried to burglarize.

Plaintiff began treatment at St. Joseph's Mental Health Clinic in 2004 with Miron Iosilevich, M.D. ("Dr. Iosilevich") and therapist Harvey Delson, LCSW. Plaintiff underwent one-on-one counseling at Crouse Chemical Dependency Services with Lisa Burch, therapist, and Steven L. Batki, M.D. ("Dr. Batki") as his treating psychiatrist.  Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), cannabis dependence and alcohol/poly substance abuse in sustained remission, and mood disorder NOS.

## II.  Discussion

Plaintiff argues that the Commissioner's determination of plaintiff's RFC is in error; the ALJ did not properly evaluate the medical evidence; and the ALJ improperly evaluated plaintiff's credibility.  The Commissioner argues that the ALJ's decision, finding that plaintiff was not disabled, is supported by substantial evidence and therefore must be affirmed.

### A.    Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d

377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

### B.   Disability Defined

An individual is considered disabled for purposes of his or her eligibility for Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or

> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next

considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing

8

significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Gainful work activity is defined as "work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a-b) (West 2009).

### C.    Credibility Assessment

An ALJ is required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in pertinent part that:

> [i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence ... These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

20 C.F.R. § 404.1529 (West 2007).

Social Security Ruling ("SSR") 96-7p governs how ALJs may evaluate the

credibility of an individual's statements.  Stated here in pertinent part:

> The purpose of this Ruling is to clarify when the
> evaluation of symptoms, including pain, under 20 CFR
> 404.1529 and 416.929 requires a finding about the
> credibility of an individual's statements about pain or
> other symptom(s) and its functional effects; to explain the
> factors to be considered in assessing the credibility of the
> individual's statements about symptoms; and to state the
> importance of explaining the reasons for the finding about
> the credibility of the individual's statements in the
> disability determination or decision. In particular, this
> Ruling emphasizes that:
>
> 1. No symptom or combination of symptoms can be the
> basis for a finding of disability, no matter how genuine
> the individual's complaints may appear to be, unless there
> are medical signs and laboratory findings demonstrating
> the existence of a medically determinable physical or
> mental impairment(s) that could reasonably be expected
> to produce the symptoms.
>
> 2. When the existence of a medically determinable
> physical or mental impairment(s) that could reasonably be
> expected to produce the symptoms has been established,
> the intensity, persistence, and functionally limiting effects
> of the symptoms must be evaluated to determine the
> extent to which the symptoms affect the individual's
> ability to do basic work activities. This requires the
> adjudicator to make a finding about the credibility of the
> individual's statements about the symptom(s) and its
> functional effects.
>
> 3. Because symptoms, such as pain, sometimes suggest a
> greater severity of impairment than can be shown by
> objective medical evidence alone, the adjudicator must

carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7 (See www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html)(2012).

**D.      Analysis**

1.      The ALJ's Findings

In the case at bar, the ALJ applied the five-step sequential evaluation

process and determined that plaintiff (1) meets the insured status requirement of

the Social Security Act through December 31, 2007; (2) did not engage in

substantial gainful activity since the alleged onset date of September 1, 2002 (20

CFR 404.1571 et seq. and 416.971 et seq.); (3) has the following severe

impairment: attention deficit hyperactivity disorder ("ADHD"), borderline

intellectual functioning ("BIF"), and depression (20 CFR §§ 404.1520(c) and

416.920(c)); (4) through the date last insured, plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525,

404.1526, 416.925 and 416.926).   Plaintiff was consultatively examined by Dr.

Kristen Barry, Ph.D ("Dr. Barry") in October of 2008.  Dr. Barry diagnosed a

history of ADHD, affective disorder, alcohol dependence, cannabis dependence,

BIF and personality disorder, NOS.  Although plaintiff alleged disabling

symptoms from hepatitis C,  consulting examiner C. Kalyani Ganesh, M.D. found

no physical limitations in July 2005, and plaintiff reported at that time that he felt

fine.  The record reflects that plaintiff has been asymptomatic and had not received

treatment for hepatitis C in the 12 years prior to the ALJ's July 22, 2009 decision.

In addition, the ALJ considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  The ALJ found that in activities of daily living, plaintiff had only mild restriction.  At the consultive examination, plaintiff appeared his stated age, was appropriately dressed, and exhibited fair hygiene and grooming.  In addition, plaintiff told Dr. Barry that he was able to dress, bathe and groom, cook, clean, launder clothes, and although plaintiff could not drive, he did use public transportation.

In social functioning, the ALJ found that plaintiff had moderate difficulties.  Plaintiff testified that he had trouble with authority figures.  Dr. Barry found that his overall manner of relating and social skills was fair at the consultative examination.  Plaintiff's eye contact was appropriate, and his gait, posture and motor behavior were normal.  Inter alia, plaintiff reported that his family relationships were good and he had friends with whom he socialized.  Although Dr. Iosilevich noted in February of 2008 that drug and alcohol abuse was not

13

material to the disability, the record indicates that religion, therapy and medication helped plaintiff control his aggressive tendencies and supports that plaintiff has better control when not engaging in substance abuse.  With regard to concentration, persistence or pace, the ALJ determined that plaintiff has marked difficulties.  Plaintiff had difficulty organizing tasks and sustaining attention, and his recent and remote memory skills were somewhat impaired.  Plaintiff experienced no episodes of decompensation, and although plaintiff was admitted to rehabilitation for substance abuse, he had no psychiatric hospital admissions during the period under review.  Accordingly, because plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation each of extended duration, the "paragraph B" criteria are not satisfied.

At Step 5, the ALJ held that the plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember and carry out simple instructions in a low stress work environment, defined as occasional decision-making, occasional changes in the work setting, occasional contact with co-workers and the general public, and less than occasional contact with supervisors, defined as no more than five percent of an eight hour workday.

14

The ALJ gave significant weight to the opinion of Dr. Iosilevich, based on the treating relationship, the doctor's specialization, and the consistency of most of his opinions with the overall record.  However, the ALJ gave less that controlling weight due to the inconsistencies that were apparent and cited by the VE, and due to the fact that Dr. Iosilevich had only evaluated plaintiff three times prior to the assessment.  The ALJ granted more weight to the opinions of the SSA's examining and non-examining consultants, as they were more consistent with the overall record including plaintiff's reported activities.  The ALJ granted significant weight to the opinion of Dr. Barry, who determined that the plaintiff had mild limitation, defined as an individual who can generally function well in understanding, remembering and carrying out simple instructions and can make simple work-related decisions.  Dr. Barry found moderate limitation, defined as more than slight but the individual is still able to function satisfactorily in interacting with the general public, co-workers and supervisors, and responding appropriately to usual work situations.  The ALJ found Dr. Barry's opinion consistent with the longitudinal record.  Accordingly, the ALJ's RFC assessment is supported by the significant weight of the evidence.

The ALJ considered plaintiff's age, education, work experience  and RFC in finding that there are jobs that exist in significant numbers in the economy that

plaintiff can perform.  The ALJ found that plaintiff had past relevant work experience in lawn maintenance and at a newspaper delivering papers, and servicing newsprint machines and setting them up for printing.[3]  The ALJ found that the mental demands of plaintiff's past relevant work exceed the plaintiff's established RFC, and accordingly, plaintiff is unable to perform past relevant work.  Factoring in plaintiff's non-exertional limitations, the ALJ asked the VE to determine the extent to which these limitations eroded the occupational base of unskilled work at all exertional levels.  The ALJ gave plaintiff the benefit of the doubt regarding his exertional limitations, based on plaintiff's allegation of his history of hepatitis C, and posed hypotheticals to the VE limiting the RFC to light work.  The VE found that plaintiff would be able to perform the duties of a light cleaner, with 1.5 million jobs in the national economy, 47,820 in New York State, and 1,640 in the local economy of Syracuse.  The VE opined that, based on his own experience and observation, the numbers of jobs in the individual economies could be reduced by 75% to eliminate daytime positions, thus addressing plaintiff's purported inability to get along with supervisors and others, and the plaintiff's occupational job base would not be significantly eroded.

The ALJ noted that although plaintiff's medically determinable impairments

---

[3]         Plaintiff alleges that he was fired from the newspaper job for tardiness.

could reasonably be expected to cause plaintiff's alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent that they are inconsistent with the RFC assessment. The ALJ, citing evidence from the plaintiff's treating psychiatrist, treating physician, state agency medical and psychological consultants, as well as from plaintiff's own statements about his daily activities, found that plaintiff had failed to produce appropriate, probative evidence as required by the SSA, Regulations and Rulings to substantiate his allegations.  This court has thoroughly reviewed the administrative transcript and concurs with the ALJ's findings, both on the ALJ's findings of plaintiff's  RFC and of plaintiff's credibility.

      2.     Plaintiff's arguments

     In his appeal, plaintiff first argues that the ALJ's determination of his RFC is in error, stating that the ALJ substituted his own opinion for that of competent medical evidence.  The Commissioner counters that the record fully supports the ALJ's RFC finding.  Dr. Barry's opinion is based on her objective clinical findings, and mirrors the ALJ's determination of plaintiff's RFC.  Dr. Barry conducted mental status evaluations and intelligence tests at the Commissioner's request and determined that plaintiff had a full scale I.Q. of 76 and that his general

cognitive functioning fell within the borderline range.  The opinions of consultive

psychologist Dennis M. Noia, Ph.D. and Ed Kamin, Ph.D. also bolster the ALJ's

RFC finding.  The ALJ clearly set forth his reasoning for giving little weight to

Dr. Iosilevich's opinion that plaintiff could not work, as that determination is

reserved to the Commissioner.  In addition, the ALJ found, and the court concurs,

that the opinions of the consultive examiners more closely mirrored the evidence

in the record.  After a thorough review of the entire record, the court finds that the

ALJ has provided sufficient reasoning for not giving plaintiff's treating physician

controlling weight, and finds that substantial evidence supports the ALJ's

determination of the plaintiff's RFC.

Plaintiff next argues that the ALJ did not properly evaluate the medical

evidence.  Specifically, plaintiff contends that the ALJ made an error of law in not

either giving controlling weight to the treating physician's opinion, or explaining

with enough specificity the level of weight given, and that the ALJ's alleged error

is a ground for remand.  The court has found, supra, that the ALJ gave sufficient

reasons for the level of weight given to Dr. Iosilevich's opinion.  The court also

discerns that plaintiff is making the additional argument that the ALJ failed to

properly develop the record. Doc. No. 12, p. 18.  The court finds plaintiff's

arguments unavailing.  The Commissioner correctly states that although an ALJ

18

must attempt to fill in any clear gaps in the administrative record, where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information.  Here, as stated supra, the Appeals Council remanded, directing the ALJ to obtain updated medical records from plaintiff's treating and other medical sources, including medical source statements.  The ALJ was also instructed to obtain a consultive mental status examination, and obtain, if necessary, medical and/or vocational expert evidence.  There is no indication in the record that plaintiff objected to the medical history that was before the ALJ.  In fact, at the hearing held on June 19, 2009, the ALJ asked plaintiff's representative if the record needed to left open for additional medical records, and she stated that the record could be closed.  The Commissioner argues, and the court concurs, that the ALJ complied with his obligations to develop the record.  The court also finds that the ALJ properly interpreted the inconsistencies between the record and Dr. Iosilevich's opinions as a legitimate reason for failing to give controlling weight to Dr. Iosilevich's opinion.

Finally, plaintiff argues that the ALJ improperly evaluated plaintiff's credibility.  Quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987), plaintiff argues that the ALJ who rejects subjective testimony concerning pain and other symptoms must do so explicitly and with sufficient specificity to enable the

court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.  Plaintiff also asserts, once again, that his treating psychiatrists opined that plaintiff was unable to work, and that Dr. Iosilevich opined that plaintiff's impairments would remain after substance abuse cessation.

The Commissioner argues that the ALJ considered plaintiff's statements about his subjective complaints of pain and functional abilities, and determined that plaintiff was partially credible. While finding that plaintiff had some mental limitations,  plaintiff's allegations of limitations to a disabling extent were not credible.  The ALJ properly noted that the plaintiff's own statements did not equate a finding of disability.  As set forth supra,  the ALJ noted that although plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent that they are inconsistent with the RFC assessment.  In addition to the statements made by plaintiff to the consultive examiners, plaintiff's hearing testimony reveals that plaintiff stated that he was unable to work, and summarized his disability as attention deficit disorder, low self-esteem, depression, and lack of stamina. Tr. 486.  However, plaintiff testified that he was able to take care of his

20

personal hygiene needs, was able to interact socially with family and friends, and did his own cooking, cleaning and shopping.  Plaintiff followed the news and stated that he reads a book  approximately every month.  The court finds that the ALJ did not err in his assessment of plaintiff's credibility, finding that plaintiff's subjective complaints were not corroborated by the substantial weight of the evidence.  After a comprehensive review of the entire administrative transcript, the court concludes that the ALJ applied the proper procedures and substantial evidence supports his determination.

## III.  Conclusion

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings (Doc. No. 12) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. No. 15) is hereby GRANTED.  The Clerk is instructed to close this case.

SO ORDERED.

August 30, 2012

_____
Neal P. McCurn
Senior  U.S. District Judge